UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

AGM-NEVADA, LLC, a Nevada
Limited Liability Corporation,

      Plaintiff,

      v.                                No.1:10-cv-01045-MV-RHS

JOHN M. STEIGELMAN; PERFORMANCE
AUTOMOTIVE GROUP, INC; a New Mexico
Corporation; TOP PERFORMANCE, LLC, a
New Mexico Limited Liability Company;
HIGH DESERT AUTOMOTIVE OF SANTA
FE, INC., a New Mexico Corporation; JBIRD
AUTOMOTIVE, INC., a New Mexico
Corporation; BASIN MOTOR COMPANY, a
New Mexico Corporation; and BASIN
ACQUISITION CORPORATION, a New
Mexico Corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

      **This matter** comes before the Court on Co-Defendant John M. Steigelman's *Motion to Dismiss Plaintiff's First Amended Complaint* (Doc. 36).  In its First Amended Complaint (the "Amended Complaint"), Plaintiff AGM-Nevada, LLC ("Plaintiff"), a purveyor of radio broadcasting services, brings counts against Steigelman – along with seven different New Mexico corporations of which he is purportedly the principal – for breach of agreement, open account, quantum meruit, negligent misrepresentation, intentional misrepresentation, fraud, and piercing the corporate veil.  On the instant motion, Steigelman contends that Plaintiff's claims against him should be dismissed with prejudice because the Amended Complaint impermissibly seeks to hold him liable for corporate debts; fails to identify the specific statements made by him that were negligent, fraudulent, or misrepresentations of fact; and fails to state with particularity

how the corporate Defendants are his "alter egos" or how the improper operation of the

Corporate Defendants injured Plaintiff.  The Court, having considered the motions, briefs,

exhibits, and relevant law, and being otherwise fully informed, finds that Steigelman's *Motion to*

*Dismiss Plaintiff's First Amended Complaint* (Doc. 36) should be **GRANTED.**  However, the

Court will dismiss the claims against Steigelman without prejudice, so that Plaintiff will have an

additional opportunity to amend its Complaint.


## RELEVANT FACTUAL BACKGROUND

### The Parties

Plaintiff, a Nevada corporation, operates several radio stations throughout the State of

New Mexico.  According to the Amended Complaint, six of the seven Corporate Defendants

(Performance Automotive Group, Inc.; High Desert Automotive of Santa Fe, Inc..; High Desert

Automotive of Santa Fe, Inc., JBird Automotive, Inc.; Basin Motor Company; and Basin

Acquisition Corporation) are New Mexico automobile sellers.  The seventh Corporate

Defendant, Top Performance, LLC, is "in the business of advertising in and around the State of

New Mexico."  (Doc. 23 Ex. 1, Am. Cplt. ¶ 15).  Steigelman is identified as the principal and

sole owner of each of the Corporate Defendants.

### The Advertising Agreements

This case involves a series of advertising agreements (hereinafter, the "Advertising

Agreements" or the "Agreements") entered into by Plaintiff and the various Corporate

Defendants, between March 2009 and June 2010.  The short "General Allegations" section of the

Amended Complaint recites that, pursuant to the Agreements, Plaintiff aired advertisements for

the Corporate Defendants on its New Mexico radio stations, "including radio talent promotions

regarding the same," in exchange for payment.  *Id*. ¶ 21.  The Complaint does not set forth how many contracts were formed between the parties or elucidate the terms of any of the Advertising Agreements.

***Defendants' Alleged Default on Payment***

At a date not set forth in the Amended Complaint, Plaintiff provided Steigelman, as the owner and principal for each of the Corporate Defendants, with invoices setting forth the money owed for use of Plaintiff's airtime.  Plaintiff contends that, "[t]o date, Defendants have only made a portion of the payments" owed under the Agreements.  *Id*. ¶ 23.

At a date also not set forth in the Amended Complaint, Plaintiff issued demand letters to Defendants at an address for Steigelman in Farmington, New Mexico, and at Performance Auto Group's business address, but Defendants continued to "refuse[] to pay the total past due and outstanding amounts owed to Plaintiff."  *Id*. ¶ 24.

The Amended Complaint further recites that Defendants owe Plaintiff a total of $111,192.48 in past due payments under the Advertising Agreements.  The breakdown is set forth as follows:

Performance San Juan                $38,627.43

Saturn Santa Fe                     $6,234.84

Performance (Talent Fee)            $8,325.00

Performance Santa Fe (Talent)       $1,800.00

Saturn Santa Fe (Talent)            $400.00

Performance East Main               $28,318.59

Performance Santa Fe $27,486.62[1]

*Id.* ¶ 25.

***Additional Factual Allegations Contained Elsewhere in the Amended Complaint***

At a date not set forth in the Amended Complaint, Plaintiff claims that Steigelman made "spurious claims . . . regarding the nature of other advertising being done on Plaintiff's radio stations."  *Id.* ¶ 52.  The Amended Complaint does not further describe these claims or identify to whom the claims were made

At a date not set forth in the Amended Complaint after the Advertising Agreements were allegedly breached, Plaintiff claims that Steigelman stated on behalf of the Corporate Defendants that payment of the money owed to Plaintiff for use of Plaintiff's airtime was not a "high priority" to the Defendants.  The Amended Complaint does not specify to whom the statement was made.

At a date not set forth in the Amended Complaint after the Advertising Agreements were allegedly breached, Plaintiff claims that Steigelman pledged to pay Plaintiff the money the Corporate Defendants continued to owe under the Advertising Agreements on a bi-weekly payment schedule.  According to Plaintiff, Steigelman failed to fulfill his pledge.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint

---

[1]The Amended Complaint does not explain the meaning of the terms in the left column, and none of the Agreements has been submitted into the record.  Moreover, it is unclear whether Defendants fulfilled their obligations under any contract between the parties.

for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A defendant's submission of a Rule 12(b)(6) motion invites the court to "test[] the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (internal quotation marks omitted).

Whether a complaint is sufficient to withstand a Rule 12(b)(6) motion is a question of law; thus, the court considering the motion must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Moore v. Guthrie,* 438 F.3d 1036, 1039 (10th Cir. 2006). While a complaint need not set forth detailed factual allegations in order to withstand a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation and marks omitted). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1940 (2009) ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements"). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 545 (citation omitted).

Thus, in order to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *See Mink v. Knox,* 613 F.3d 995, 1000 (10th Cir. 2010); *Twombly*, 550 U.S. at 570.  A complaint sets forth a facially plausible claim when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1940.  "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (noting that if the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible'") (quoting *Twombly,* 550 U.S. at 570).

## DISCUSSION

## I.    Claims Implicating the "Veil-Piercing" Doctrine

Counts I - III of the Amended Complaint assert claims against all Defendants for breach of agreement; collection of open accounts under New Mexico's "open account" statute, N. M. Stat. Ann. § 39-2-2.1 (1978); and quantum meruit for the value of Plaintiff's radio airtime, respectively.  On the instant motion, Steigelman argues that Plaintiff cannot establish his liability on any of the three claims, because Plaintiff has not alleged that he was a party to any of the agreements at issue or shown how any of the Corporate Defendants served as an "alter ego" to him.  Plaintiff responds that Count VII – which asks the Court to disregard the corporate form

6

and find Steigelman jointly and severally liable for all its damages – is sufficiently pled, and thus renders Steigelman's entire argument moot.  Accordingly, the Court will begin its analysis with Plaintiff's claim that the corporate veil should be pierced.

### A.  Piercing the Corporate Veil

Courts have long recognized "the equitable principle of lifting or drawing aside the thin guise that is the veil of corporate entity to expose the actual individuals hiding behind it." *United States v. Farr*, 536 F.3d 1174, 1183 n.4 (10th Cir. 2008) (internal citation and marks omitted); *see also Certain Underwriters at Lloyd's, London v. Nance*, 2007 U.S. Dist. LEXIS 97052, at *25 (D.N.M., Aug. 30, 2007).  Whether the corporate veil should be pierced is determined by a plaintiff's ability to show a corporate director or officer's (1) instrumentality or domination over the corporation(s); (2) improper purpose; and (3) proximate causation.  *Id.*, citing *Scott v. AZL Res., Inc.*, 107 N.M.118, 121 (N.M. 1988).

In support of Plaintiff's claim that Steigelman should be held jointly liable for the actions of the Corporate Defendants under the veil-piercing doctrine, Count VII alleges in conclusory fashion that the Corporate Defendants were "not operated in a legitimate fashion to serve the valid goals and purposes of those businesses, but instead functioned under the domination and control and/or for the purposes of [] Steigelman," so that each of them "was operated as the 'alter ego' of [] Steigelman."  (Doc. 33 Am. Cplt. ¶¶ 68-69).  Count VII further states that Steigelman "used the corporate form to operate each of [the Corporate Defendants] for improper purposes," (*id.* ¶ 70); operated each of the Corporate Defendants "in an illegitimate fashion" (*id.* ¶ 71); and maintained so complete a control over the Corporate Defendants "as to render [them] instrumentalities of [] Steigelman.  *Id.* ¶ 72.  However, Plaintiff does not enhance these allegations by providing factual support for them.

7

The Amended Complaint does not set forth enough facts to state a claim for veil-piercing that is plausible on its face.  With respect to the first veil-piercing requirement – a showing of "instrumentality and domination" – the case law provides that the requirement is satisfied when a plaintiff establishes that the corporation was not operated "in a legitimate fashion to serve the valid goals and purposes of that corporation but [, rather,] that it functioned under the domination and control and for the purposes of some dominant party."  *Harlow v. Fibron Corp.*, 100 N.M., 379, 382 (1983).  Here, as noted above, Plaintiff purports to meet that requirement by simply reproducing the legal standard as set forth in the case law, claiming that the veil should be pierced because none of the Corporate Defendants "operated in a legitimate fashion to serve the valid goals and purposes of those businesses, but instead functioned under the domination and control and/or for this purposes of [ ] Steigelman."  (Doc. 33 Am. Cplt. ¶ 68).  Plaintiff's wholly conclusory statement of claim is insufficient to survive a motion to dismiss.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Papsan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Plaintiff argues in its response brief that stray allegations appearing at various places in the Amended Complaint, when taken in combination, are sufficient to pierce the corporate veil. Specifically, Plaintiff points to its allegations that Steigelman (1) is the owner of the Corporate Defendants (Doc. 33 Am. Cplt. ¶ 67); (2) is the principal for each of the Corporate Defendants, (*id.* ¶¶ 13-20); and (3) entered into a series of Advertising Agreements with Plaintiff "as principal" of the Corporate Defendants (*id.* ¶ 21); and that Defendants "including Steigelman"

8

(4) informed Plaintiff that "Steigelman would pay upon a bi-weekly payment plan for delinquent monies owed to Plaintiff," (*id.* ¶ 59); (5) claimed that repayment of the Corporate Defendants' debts was "not a 'high priority' to Defendants," (*id.*); (6) made "spurious claims . . . regarding the nature of other advertising being done on Plaintiff's radio stations," (*id.* ¶ 52); and (7) "refused to pay the total past due and outstanding amounts owed to Plaintiff" (*id.* ¶ 24).[2]  These allegations are either irrelevant to the veil-piercing analysis or insufficient to show that the Corporate Defendants existed as "alter egos" to Steigelman or that they were operated with an improper purpose.  At most, Plaintiff suggests that Defendants informed Plaintiff that Steigelman would personally assume the debts of the corporate Defendants – although the vague wording of the Amended Complaint makes even that conclusion unclear.  This is simply not enough to show that the Corporate Defendants were mere instrumentalities of Steigelman, let alone that they were operated in an illegitimate fashion and with an improper purpose.

Thus, the Court finds that Plaintiff's Count VII – which asks it to disregard the corporate form and find Steigelman liable under any and all remaining counts – should be dismissed.

## B. **Breach of Agreement**

Count I of the Amended Complaint alleges that Defendants breached their Advertising Agreements with Plaintiff by failing to pay Plaintiff for $111.192.48 for airtime and services Plaintiff provided to Defendants.  (Doc. 33 Am. Cplt. ¶¶ 28-32).  Because Plaintiff has not

---

[2]Plaintiff makes several new, unsupported allegations with regard to the relationship between Steigelman and the Corporate Defendants in its response brief, and suggests that, if "additional factual development is necessary, which Plaintiff denies," it seeks leave to again amend its Complaint to include them.  (Doc. 37 at 3 n.1).  The Court will not consider statements appearing only in a brief that are not supported by reference to the pleadings or other evidence in the record when ruling on Steigelman's motion to dismiss.  *See GFC Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 2007).  The Court will consider Plaintiff's request to amend *infra*.

alleged that Steigelman was a party to any of the Agreements at issue and has not established that the corporate form should be disregarded, the Court finds that Plaintiff's breach of agreement claim against Steigelman should be dismissed.

### C.  Open Account

Count II of the Amended Complaint alleges that Plaintiff is entitled to recover past due amounts and attorney's fees from all Defendants under New Mexico's open account statute, N.M. Stat. Ann. § 39-2-2.1 (1978), which provides that "[i]n any civil action in the district court . . . to recover on an open account, the prevailing party may be allowed a reasonable attorney fee set by the court, and taxed and collected as costs."  Plaintiff contends that in this case, "there was a written account concerning a related series of debit and credit entries of reciprocal charges and allowances kept open and subject to a shifting balance as additional entries were made." (Doc. 33 Am. Cplt. ¶ 34).  Again, because Plaintiff has not alleged that Steigelman was a party to the Agreements for purpose of which the alleged open account was created, and moreover, because Plaintiff has not established that the corporate form should be disregarded, the Court finds that Plaintiff's claim under the "open account" statute should be dismissed against Steigelman.

### D.  Quantum Meruit

Count III of the Amended Complaint is based on a theory of quantum meruit.  "Under New Mexico law . . . a theory of quantum meruit, or unjust enrichment, is distinct from contract. It is a remedy created by courts for reasons of justice and equity, and requires the wrongdoer to make restitution to the aggrieved party."  *City of Las Cruces v. El Paso Elec. Co.*, 904 F. Supp. 1238, 1246-47 (D.N.M. 1995) (internal quotation omitted); *see also United States v. Bd. of County Comm'rs*, 730 F. Supp. 2d 1327, 1338 (D.N.M. 2010).  Plaintiff's count in quantum meruit seeks recovery of the amount still allegedly owed by the Corporate Defendants pursuant

to the Advertising Agreements between the parties, as the value of the benefit Plaintiff conferred

on Defendants by which Defendants were unjustly enriched. Once again, Plaintiff does not

distinguish between Steigelman in his individual capacity and the Corporate Defendants. *See*

Doc. 33 Am. Cplt. ¶ 37 ( "Plaintiff has conferred a benefit on Defendants, at the request of

Defendant, worth $111,192.48."). For the reasons set forth above, Plaintiff has not established

that it conferred a benefit on Stigelman under the "veil-piercing" doctrine. Thus, the Court finds

that Plaintiff's claim for quantum meruit against Steigelman should be dismissed.


## II.    Plaintiff's Claims Against Steigelman in His Individual Capacity

The three remaining counts in the Amended Complaint – for negligent misrepresentation,

intentional misrepresentation, and fraud – all seek damages from Steigelman in his individual

capacity. The Court will consider each claim in turn.

### A. <u>Negligent Misrepresentation</u>

Count IV of the Amended Complaint recites that "Defendants collectively, and through .

. . Steigelman, made untrue statements and/or representations *about paying Plaintiff for services*

*rendered* pursuant to the Advertising Agreements without having reasonable grounds to believe

that the statements . . . were true." (Doc. 33 Am. Cplt. ¶ 46) (emphasis added). Plaintiff does

not set forth with particularity any negligently-made statements made by Steigelman "about

paying Plaintiff for services rendered" anywhere under Count IV. Looking beyond the

appropriate section, it appears that Plaintiff could be referring to allegations (which appear in a

later section of the Amended Complaint under the heading of "Count VI: Fraud") that

> Defendants made numerous misrepresentations of facts, *including statements*
> *made by Defendant Steigelman on behalf of the Defendant [corporations]*, that
> payment of monies owed pursuant to the Advertising Agreements were [sic] not a

11

'high priority' to Defendants[,] and that Defendant Steigelman would pay upon a bi-weekly payment plan for delinquent monies owed to Plaintiff after Defendant Steigelman failed to meet the original terms of the Advertising Agreements.

(Doc. 33 Am. Cplt. ¶ 59).

The Amended Complaint does not assert which of Steigelman's alleged misrepresentations were negligently made, as opposed to intentionally made under Plaintiff's Count V for intentional misrepresentation.[3]  Because of Plaintiff's lack of specificity, Steigelman cannot know which acts he is vaguely alleged to have committed are purported to constitute violations of which torts.  *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (stating that the *Twombly* requirement that a complaint plausibly set forth each stated claim is meant "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense").  However, there is some indication that post-*Twombly*, the Tenth Circuit has been willing to consider alleged misrepresentations under multiple theories of liability where, as here, a plaintiff failed to delineate which allegations were meant to support which theory.  *See Alpine Bank v. Hubbell*, 555 F.3d 1097, 1107-1108 (looking "beyond labels to the substance of the allegations" to "read the negligent-misrepresentation claim to state a claim for fraudulent misrepresentation as well").  Thus, the Court will consider the above alleged misrepresentations under both theories.

The first misrepresentation "about paying Plaintiff for services rendered" mentioned in Paragraph 59 is Steigelman's alleged statement that payment of monies owed to Plaintiff by the

---

[3]Plaintiff's response brief likewise merges its discussion of its negligent misrepresentation, intentional misrepresentation, and fraud claims in a single section of the argument, which begins by setting forth the allegations contained in ¶ 59 of the Amended Complaint and states that "[t]he Court can reasonably infer from [them] that Defendant Steigelman is liable for misrepresentation and fraud."  (Doc. 37 at 6).

Corporate Defendants was "not a 'high priority'" to the latter.  (Doc. 33 Am. Cplt. ¶ 59).  Given Plaintiff's assertion that payment has yet to be made in full, it is unclear how this statement can be taken as a misrepresentation of fact.

Next, Paragraph 59 recites that Steigelman promised to make bi-weekly payments to fulfill the debts of the Corporate Defendants.  Again, it is unclear from the Amended Complaint whether Plaintiff means to claim that Steigelman's promise was intentionally false (and thus provides a basis for Plaintiff's intentional misrepresentation claim) or whether Plaintiff means to claim that Steigelman's promise was negligently made.  Assuming *arguendo* that Plaintiff asserts that the statement constitutes a negligent misrepresentation, it is insufficient to state a claim for negligent misrepresentation that is plausible on its face.  First, the law of this Circuit is clear that a promise to perform in the future "cannot serve as the predicate for a negligent-misrepresentation claim.  This is not some obscure technical rule.  It is a natural consequence of the meanings of the terms *negligent* and *misrepresentation*." *Alpine Bank*, 555 F.3d at 1107 (citation omitted).  As the Tenth Circuit held in rejecting a claim for negligent misrepresentation based on defendant's promise to oversee construction of a house in *Alpine Bank*, a "misrepresentation" is by definition "a false statement of fact.  But a promise in itself contains no assertion of fact other than the implied representation that the speaker intends to perform the promise." *Id.*  Thus, in order for a promise to constitute a misrepresentation, it must be a false declaration.  "If the promissor intends not to perform, however, the misrepresentation . . . is not negligent; it is, rather, knowing and intentional." *Id.*

Moreover, even if a promise to make payments could be a *negligent* misrepresentation, which it plainly cannot, Plaintiff has alleged only that Steigelman pledged – after the Agreements were breached by the Corporate Defendants – to make bi-weekly payments in

fulfillment of debts that he had no personal obligation to pay.  This is insufficient to state a claim

for negligent misrepresentation under New Mexico law, which requires a plaintiff to both "plead

facts supporting the existence of a misrepresentation" and the existence of "pecuniary loss

caused by justifiable reliance thereon."  *Hill v. Vanderbilt Capital Advisors*, 2011 U.S. Dist.

LEXIS 138812, at *51 (D.N.M., Sept. 30, 2011).  *See also Garcia v. Rodey*, *Dickason, Sloan,*

*Akin & Robb, P.A.*, 106 N.M. 757, 761 (1988).  Even putting to the side the other deficiencies in

its negligent-misrepresentation claim, Plaintiff has not alleged that it suffered any additional

pecuniary loss as a result of having relied on misrepresentations made by Steigelman after the

Corporate Defendants had already breached the Agreements.

    For the above reasons, the Court finds that Plaintiff's claim for negligent

misrepresentation against Steigelman should be dismissed.

### B.  <u>Intentional Misrepresentation</u>

    Count V asserts that Defendants made intentional misrepresentations of fact, "including

but not limited to spurious claims made by Steigelman regarding the nature of other advertising

being done on Plaintiff's radio stations."  (Doc. 33 Am. Cplt. ¶ 52).  Count V does not identify

with specificity any other intentional misrepresentations made by Steigelman.[4]  To the extent

that Plaintiff's claim for intentional misrepresentation is based on the same statements as its

claim for negligent misrepresentation appears to be (i.e., the allegations that Steigelman stated

that repayment of the Corporate Defendants' unpaid debts was not a high priority to Defendants

---

    [4]However, Plaintiff's response brief sets forth a list of four new factual allegations in
support of its intentional misrepresentation and fraud claims that are not elucidated in the
Amended Complaint.  (Doc. 37 at 6 n.2).  As discussed *supra* at n.2, the Court will not consider
statements in a brief that are not supported by reference to the pleadings or other evidence in the
record when ruling on Steigelman's motion to dismiss.

and that he would pay those debts under a biweekly payment plan), for several of the reasons that Plaintiff cannot state a claim for negligent misrepresentation, it cannot state a claim for intentional misrepresentation.  The one aspect in which the analyses differ is that, as discussed above, Plaintiff may assert that Steigelman's alleged promise to assume the debts of the Corporate Defendants was intentionally false.  However, "[a] fraudulent misrepresentation claim, to be successful, requires that the injured party show that the other party (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and *upon which the injured party actually and detrimentally relies*."  *Saylor v. Valles*, 133 N.M. 432, 438 (N.M. Ct. App. 2002) (emphasis added).  Because Plaintiff has not alleged that it relied to its detriment on Steigelman's promise to repay monies that the Corporate Defendants already owed Plaintiff, Plaintiff cannot base its intentional misrepresentation claim on this promise.

Thus, the Court is left to consider whether Plaintiff has set forth a plausible claim for intentional misrepresentation based solely on the allegation that Steigelman made a spurious statement "regarding the nature of other advertising being done on Plaintiff's radio stations."  *Id.* The Court finds that Plaintiff has failed to do so.  The Amended Complaint provides no context for the statement and offers no further explanation as to what Steigelman actually stated "regarding the nature" of Plaintiff's advertising, to whom the statement was made, or how Plaintiff came to rely on the statement to its detriment.  Therefore, the Court finds that Plaintiff's claim for intentional misrepresentation against Steigelman should likewise be dismissed.

### C.  Fraud

Finally, Count VI of the Amended Complaint recites that the alleged misrepresentations asserted at Paragraph 59 (that Steigelman stated that repayment of the Corporate Defendants'

unpaid debts was not a high priority, yet promised to pay those debts under a biweekly payment plan) are also evidence of fraud.  Under New Mexico law, "[f]raud consists of the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations."  N.M. Stat. Ann, § 30-16-6 (1978).  For the reasons set forth with respect to Plaintiff's negligent-misrepresentation and intentional-misrepresentation claims, the Court finds that Plaintiff has failed to allege that Steigelman took anything of value from Plaintiff by means of the representations asserted in the Amended Complaint.  Therefore, the Court finds that Plaintiff's fraud claim against Steigelman should also be dismissed.

**III.     Whether Plaintiff Should Be Permitted to Again Amend its Complaint**

      Having determined that every count against Steigelman in the Amended Complaint is subject to dismissal under Rule 12(b)(6), we must now consider whether amendment should be allowed.  While Plaintiff has not filed a separate motion for leave to amend pursuant to Rule 15, it indicates in its response brief that it could enhance the Amended Complaint with additional factual allegations "[t]o the extent that additional factual development is necessary."  (Doc. 37 at 3 n.1).

      Rule 15 provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). "The decision to [allow] amend[ment of] the pleadings . . . lies within the sound discretion of the district court." *Clayton v. Tansy*, 26 F.3d 980, 982 (10th Cir. 1993). The Court may refuse to permit amendment for various reasons including "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, [and] futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). However, "outright refusal to grant the leave without any

16

justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Steigelman argues that the Court should deny Plaintiff leave to amend because Plaintiff filed the Amended Complaint more than four months after its Original Complaint was filed. "Accordingly, Plaintiff had more than enough time to develop factual assertions to support its claims against Defendant Steigelman and has had two opportunities to include these assertions in its pleadings." (Doc. 38 at 4). Further, Steigelman notes that Plaintiff has proffered no explanation as to why it failed to set forth the additional factual allegations in support of its veil-piercing and intentional misrepresentation claims in either of the two previous Complaints. While Steigelman's arguments are eminently reasonable, he has not shown that Plaintiff's proposed amendments follow an undue delay or are the result of a dilatory motive. Moreover, Steigelman does not argue that allowing further amendment will unduly prejudice him at this early stage of the litigation. Thus, the Court will allow Plaintiff to amend its Complaint for a second time. Plaintiff is urged to refer to the pleading requirements set forth by the Supreme Court in *Bell Atlantic v. Twombly*, as well as the holdings herein, in setting forth its claims.

Accordingly, Plaintiff's Amended Complaint against Steigelman will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, all of the claims in Plaintiff's Amended Complaint (Doc. 33) against Co-Defendant John M. Steigelman are **DISMISSED WITHOUT PREJUDICE,** and Plaintiff is granted leave to file a Second Amended Complaint. Plaintiff's Second Amended

Complaint should be filed no later than **February 29, 2012.**

      **IT IS THEREFORE ORDERED** that Steigelman's *Motion to Dismiss Plaintiff's First*

*Amended Complaint* (Doc. 36) is **GRANTED**.

      **DATED** this 31st  day of January, 2012.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiff:
S. Charles Archuleta
Eduardo A. Provencio
Neil R. Bell

Attorneys for Defendant:
Dylan O'Reilly
William T. Denning

18